U.S. DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

AO 91 (Rev. 02/09) Criminal Complaint

DEC 0 2 2010

CHRIS R. JOHNSON, Clerk
By
Deputy Clerk

# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas
Harrison Division

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. 10-3017 |
| | ) | 3:10 m 3017-001 |
| Mark Krause | ) | |

## CRIMINAL COMPLAINT

I, the Complainant in this case, state that the following is true to the best of my knowledge and belief.

### COUNT 1

On or about the date of June 8, 2010, in the county of Carroll, in the Western District of Arkansas, the defendant Mark Krause, by force and threat of force, did willfully attempt to kill, injure, intimidate and interfere with a person who was voting or acting as a legally authorized election official in any primary, special or general election to wit, the defendant placed an improvised explosive device at a polling place in Carroll County, Arkansas prior to and during a primary runoff election and thereby attempted to kill a voter or legally authorized election official, all in violation of 18 U.S.C. § 245(b)(1)(A).

### COUNT 2

On or about the date of June 8, 2010, in the county of Carroll, in the Western District of Arkansas, the defendant Mark Krause, knowingly possessed a firearm, namely a destructive device, not registered to him in the National Firearms Registration and Transfer Record, in violation of and 26 U.S.C. §§ 5861(d) and 5871.

This criminal complaint is based on these facts:

■ Continued on the attached sheet.

*Complainant's Signature*

Keith Frutiger, Special Agent FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: December 2, 2010

9:00 pm

City and State: Fayetteville, Arkansas

*Judge's signature*

Erin Setser, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF WARRANT FOR ARREST

I, Keith W. Frutiger, a Special Agent (SA) of the Federal Bureau of Investigation (FBI), Little Rock, Arkansas, being duly sworn, state that the following is true and correct based upon my personal knowledge, investigation, and belief:

## INTRODUCTION

1.   I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have held that position for over nine (9) years. I am presently assigned to a Domestic Terrorism Squad whose principle responsibility is to investigate a broad range of federal violations, which include explosives violations and other acts of terrorism. Prior to my appointment with the FBI, I served as a Police Officer for the City of Edmond (Oklahoma) Police Department for a period of approximately seven (7) years. I make this affidavit based upon my familiarity of the facts and circumstances of this investigation, my participation in the investigation of the offenses described below, and the investigation of others assigned to the Joint Terrorism Task Force of Arkansas (JTTFA).

2.   This affidavit is made in support of an application for a warrant for arrest for violations of: Title 18, U.S.C. § 245(b)(1)(A) and Title 26 U.S.C. §5861(d).

3.   The statements contained in this affidavit are based in part on information obtained and provided by Special Agents of the FBI, task force officers of the JTTFA, and other law enforcement officers. Since this affidavit is being submitted for the limited purpose of securing a warrant, your Affiant has not included each and every fact known to me concerning this investigation. Your Affiant has set forth only the facts that are believed to be necessary to establish probable cause that violations of Title 18, U.S.C. § 245(b)(1)(A) and Title 26 U.S.C. §5861(d) have occurred.

1

1        FACTS AND CIRCUMSTANCES

3    4.    On June 09, 2010, an Improvised Explosive Device (IED) was found at the Osage Baptist Church, 16475 Highway 103 South, Osage, Arkansas. The church had been used on June 08, 2010, as a polling location for the run-off elections. Investigation revealed that the IED was placed at the church between 6:00 p.m. on June 07, 2010, and 6:00 a.m. on June 08, 2010. As part of the investigation, interviews were conducted of poll workers Kay Reed and Pam Underhill who stated that they arrived at the church at 6:00 a.m. on June 08, 2010 to open the church up in preparation for voting. Reed noticed the Pepsi can IED in front of the door and picked it up to move it out of the way. Once inside the church, Reed set the can on the desk of the church secretary. During the day, there were 4 election workers at the polling place and 35 individuals who voted at the polling place. The IED remained inside the polling place throughout that day and it was handle by several people who believed it to be a Pepsi can. The next morning that someone discovered that there was wiring on the bottom of the can and alerted law enforcement.

5.    The IED was built within a 12 ounce Pepsi Cola can. The IED was submitted to the FBI Laboratory in Quantico, Virginia, where it was examined and analyzed pursuant to IED examination protocol. According to Supervisory Special Agent (SSA) Mark Whitworth who is an explosives analysts and expert with the FBI, the main propellant in the IED was flash powder, which is commonly found in fireworks and other pyrotechnics. Whitworth stated that the IED was capable of causing death or serious bodily injury had it functioned as designed. The bottom of the can had been cut out using precision detail work, possibly using a machine. The main components of the device, described in the paragraphs below, were held in place via wax. When the Pepsi can was sitting upright, it was impossible to tell that it was an IED.

6.    There were several AAA size batteries that powered the device.

Those batteries had the outside identifying marks, or "skins", stripped off of them. This was possibly done in an attempt to make the batteries impossible to trace. The batteries were wired in parallel around a central core within the can. The batteries served to power the device and also to act as shrapnel upon detonation.

7. According to Whitworth, there were three main switches within the IED. All three switches had to be activated in order to allow the free flow of electricity from the batteries (a closed circuit) to detonate the device.

8. The first switch was a small, two-pronged switch commonly referred to as a "two-pin jumper." When a cap containing a metal bridge was attached to both of the metal ends of the "jumper", it served to close the electrical circuit which allowed the free flow of electricity between the two prongs of the switch.

9. The second switch was a spring activated plunger rod that served as an "improvised anti-lift switch". When the IED was sitting upright, the plunger rod held a piece of copper from a printed circuit board above two connectors. When the IED was picked up or turned over, the spring pushed the piece of copper into the two connectors, thereby closing the electrical circuit and allowing the free flow of electricity through the switch.

10. The third switch was a slide switch, or an "off/on switch". Sliding the switch to the "on" position closed the electrical circuit and allowed the free flow of electricity through the switch.

11. In addition to the batteries being used as shrapnel, there was bird shot placed within the device to act as shrapnel as well. The bird shot appeared to be approximately size 8 bird shot, which is commonly found in shotgun shells for hunting birds.

12. On Tuesday, November 23, 2010, William Meeks and an employee, Johnny Lyons, were cleaning out a single family residence located at 37797 Highway 23, Huntsville, Arkansas. Meeks is a contractor who was hired by Rogers Land Company to clean out the residence of debris in order to prepare it for auction.

13. While cleaning the residence, Meeks and Lyons found some printed material that described the making of explosive devices. They called the Madison County Sheriff's Office (MCSO) due to their concerns. The MCSO called the Fayetteville Office of the FBI after looking at the material. FBI Special Agent (SA) David Blakely and Intelligence Analyst (IA) Danny Miller responded to the scene to further investigate the matter.

14. SA Blakely and IA Miller found several books and/or manuals related to constructing explosive devices and militia extremism. They found part of a computer CPU, handwritten notes and other documents and journals, and a AA size battery that had the "skin" stripped off as described in paragraph 6 above. Since these items had been abandoned in the home, SA Blakely took custody of them for further investigation. In addition, SA Blakely took numerous photos of the home, in which large pyrotechnic type fireworks were visible.

15. On Monday, November 29, 2010, your Affiant examined the material and recognized similarities between the materials found by SA Blakely in the home at 37797 Highway 23, Huntsville, Arkansas, and the investigation of the IED found at the Osage Baptist Church. Similarities include but are not limited to the AA size battery with the stripped "skin" (previous paragraph) and numerous "two-pin jumpers" similar in appearance to those in the IED (as described in paragraph 8) which were found within the partial computer CPU. Due to the similarities, your Affiant wanted to investigate the materials and other debris abandoned at the home more thoroughly. Your Affiant called Captain Robert Boyd at the MCSO who advised that the debris in the home had already been removed by the Rogers Land Company.

16. On Monday, November 29, 2010, your Affiant contacted Steve Roberts, an employee of the Rogers Land Company, who advised that the residence at 37797 Highway 23, Huntsville, Arkansas, was a foreclosed home belonging to Wells Fargo Home Mortgage. It was previously owned by Mark Krause. Roberts advised that the personal effects

1 abandoned in the home were removed by William Meeks, who is a contractor for the Rogers
2 Land Company. Roberts then provided a cellular telephone number for Meeks. Your Affiant
3 contacted Meeks and met him at his residence. All of the debris from the former Krause
4 residence was present on a large trailer and in the back of Meeks' truck at his residence. Your
5 Affiant and other law enforcement officials followed Meeks to the Tontitown land fill and
6 sorted through the debris at that location.

7  17.  During a search of the debris, the following items were found:
8 several 12 ounce beverage cans that had the tops cut off, one in particular was precision cut
9 similar to the can used as the IED described in paragraph 5 (one or more of the found cans
10 contain what appear to be wax in the bottom of the can); a number of fireworks that could
11 contain flash powder as described in paragraph 5; a metal rod similar in appearance to the rod
12 used in the "improvised anti-lift switch" as described in paragraph 9; a plastic zip-lock type
13 sandwich bag containing small round pellets that appear to be size 2 bird shot, slightly larger
14 than, but similar in nature to the bird shot described in paragraph 11; and personal items of
15 Mark Krause, including letters, bank statements and other such items.

16  18.  A review of handwritten notes found in the debris revealed
17 several drawings and sketches that appeared to be consistent with the "improvised anti-lift
18 switch" described in paragraph 9 and the wiring of the batteries as described in paragraph 6.
19 These drawings were photographed and were provided via e-mail to SSA Mark Whitworth at
20 the FBI Laboratory.

21  19.  SSA Whitworth stated that the drawings/sketches of the
22 "improvised anti-lift switch" were visually consistent with being associated with the improvised
23 anti-lift switch used in the Osage Baptist Church device. Since the individual who drew the
24 schematic was using standard 1/4" graph paper, the schematic is of the same scale as the frame
25 used on the improvised switch in the Osage IED.

26  20.  SSA Whitworth stated that the drawing that appeared similar to
27

5

1  the wiring of the batteries was visually similar to the Osage IED in that the drawing had what
2  appeared to be lines linking the tops of the positive ends of the batteries. The Osage IED had
3  wires soldered to the positive contact points of the batteries.

4  21.  As part of the investigation, Bureau of Alcohol, Tobacco,
5  Firearms and Explosives (BATFE) Special Agent Tony McCutcheon, caused a check with the
6  National Firearms Branch of BATFE and determined that Krause had not made any application
7  (in order to possess or make) for the registration of a destructive device, nor had Krause ever
8  had any destructive device registered to him in The National Firearms Registration and Transfer
9  Record.

10  22.  During the investigation, agents with the FBI interviewed a
11  cooperating witness ( hereinafter CW) who had lived with and had a close personal
12  relationship with Mark Krause for an extended period of time. CW stated that he/she was
13  familiar with the handwriting and drawings of Mark Krause. CW was shown various writings,
14  diagrams and sketches that were found in the residence and outbuildings located at 37797
15  Highway 23, Huntsville, Arkansas including the drawings and sketches that appeared to be
16  consistent with the "improvised anti-lift switch" as described in paragraph 18 above. CW
17  identified the documents as having been written and sketched by Mark Krause. CW indicated
18  that Mark Krause was experiencing financial problems and as a result had been traveling
19  around and spending time visiting family and/or friends. CW stated that CW knew Mark
20  Krause to have been back home in Arkansas on June 10, 2010, because he had been to a doctor
21  in Springdale, Arkansas on that date for an ear infection.

22  23.  CW consented to allowing the Federal Bureau of Investigation
23  to access Mark Krause's Facebook Profile. FBI Special Agent, Tim Healy reviewed Mark
24  Krause's (Mark) Facebook comments and status updates for the months of May 2010 through
25  July 2010 in order to determine his location. According to Mark's update on May 31, 2010 at
26  9:23 A.M., Mark posted the comment "memphis bound." On June 6, 2010 at 8:11 P.M. via
27

1  Mobile Web, Mark posted the comment "is home." Then on June 8, 2010 at 10:25 P.M., Mark
2  posted "perforated eardrum, with infection." There were a total of 11 comments posted in
3  response to Mark's posting; one response by Mark on June 9, 2010, at 12:59 P.M. stating
4  "actually, i think the infection damaged the eardrum. i had a pretty serious sinus infection that
5  lasted a while and my ears got really clogged feeling. then an earache for a couple of days. then
6  I blew my nose and stuff kind of gurgled out of one of my ears. the only thing i'm putting in
7  there is antibiotic eardrops."

8  24.  Based upon all of the information set forth in this application,
9  your Affiant respectfully submits that there is probable cause to believe that Mark Krause had
10  committed violations of Title 18, U.S.C. § 245(b)(1)(A) and Title 26 U.S.C. §5861(d).

12  AND FURTHER, AFFIANT SAITH NOT.

14  _____
    Keith W. Frutiger
15  Special Agent
    Federal Bureau of Investigation
16  Little Rock, Arkansas

17  Subscribed and sworn to before me this 2nd day of December, 2010.

    _____
19  U.S. Magistrate Judge